Town of Burlington *v.* New Haven and Northampton Company.

## THE TOWN OF BURLINGTON *vs.* ˙THE NEW HAVEN AND NORTHAMPTON COMPANY.

A railroad company required by its charter to put any highway altered by them in locating their road in as good repair as before the alteration, and to the acceptance of a committee to be appointed by a judge of the superior court for the purpose, having made such an alteration of a highway in the town of B. and claiming to have put the same in sufficient repair, though they had not done so in fact, the selectmen of the town agreed with them that in consideration of $100 paid to them for the town, they as selectmen would discharge the company from all liability to the town for the alteration of the highway and from all future liability to maintain it. The money was received by the selectmen, who paid it into the treasury of the town, and at the next annual meeting of the town, in making their general report, stated the fact of the receipt of the money and the arrangement made with the company with regard to the highway, to which no objection was made by any person present. Afterward the town repudiated the agreement of the selectmen and demanded of the company that they should repair the road, which they refusing to do, the town brought a bill in chancery to compel them to do it, offering to refund the $100, or to allow it toward expense incurred by them in the reparation of the road, which had exceeded that sum. Held, 1st, that the selectmen by virtue of their office had power to bind the town by the contract in question; and 2d, that if they had not, their act had been fully ratified by the town.

THIS was a petition in chancery brought to the superior court by the town of Burlington against the respondents, a railroad company, to compel them to put into good repair a highway altered by them in locating their railroad. The facts were found by a committee to whom the case was referred.

The resolution of the general assembly authorizing the respondents to make the railroad, empowered them, in case any public highway should be so located that the railroad could not be judiciously laid out without interfering therewith, by their engineers to cause such highway to be altered in such manner that the railroad might be made upon the best site of ground for that purpose; provided that the highway so altered should be put in as good repair as at the time of altering the same. And it was further provided, that in case of altering any such highway, the company might apply

to any judge of the superior court, who might by law judge between the parties; who, after notice given, might appoint three disinterested persons to determine whether the company had put the highway in as good repair as at the time of altering the same, and that their decision should be final.

The respondents, in the year 1848, soon after the passage of the resolution referred to, proceeded to locate and construct their road through a part of the town of Burlington, and in so doing occupied for a considerable distance the site of a highway which ran along the bank of the Farmington river. This highway they altered by removing it to the side of its original location, and of the railroad track, making it generally narrower, and in many places digging into the side of a high and steep hill to make room for it. The road as thus altered was subject to land slides, and in consequence more expensive to keep in repair, and at times difficult and dangerous for public travel, and at the time the petition was brought the town was threatened with suits for injuries received thereon. The respondents had never put it in as good repair as before the alteration, and had never applied for the appointment of a committee to view the same. The highway was one originally established by the county court.

In the year 1850, the respondents, on complaint being made to them by the town of the condition of the highway, made some repairs upon the same, which they claimed to be sufficient, and soon after made an agreement in writing with the selectmen of the town, by which, in consideration of $100 then paid to them for the town, they as selectmen, discharged the respondents from all liability to the town for the alteration of the highway, and from all future liability to maintain it. The selectmen had no special authority from the town to make this contract, but acted only under the general powers conferred upon them as selectmen by the law.

It was the custom of the selectmen of the town, at its annual meeting, to make a report of the financial condition of the town, and of all moneys received and disbursed during

the year; upon which report, although subject to discussion, it was not usual to take a vote or any specific action; and at the annual meeting of the town next following, the selectmen, in the exhibits of receipts for the year, reported the sum of one hundred dollars, as received of the New Haven and Northampton Company, upon the consideration and for the purpose before mentioned; and no objection was publicly made in the meeting, to the report on that account, or to the action of the selectmen in the matter; and the money went into the town treasury, and was expended by the town in repairing the road.

The town afterward repudiated the contract made by the selectmen and applied to the respondents to complete the reparation of the road, which they refused to do, claiming to be discharged by the contract from all further duty with regard to the road. Thus matters remained until 1854, when, by vote of the town, the present petition was brought.

The petitioners offered to refund the $100, or allow it toward the expense incurred by them in repairing the road, which was considerably more than that amount.

The case was reserved on these facts for the advice of this court.

*Hooker* and *Cornwall,* for the petitioners.

The case presented clearly entitles the petitioners to the relief sought, unless the town is concluded by the action of the selectmen.

1. The selectmen had no power to make the contract. See Rev. Stat., tit. 3, sec. 27. *Union* v. *Crawford,* 19 Conn., 331. *Griswold* v. *North Stonington,* 5 Conn., 367. *Leavenworth* v. *Kingsbury,* 2 Day, 323. The powers of selectmen are here expressed, so that there is no room for any implication.

2. There was no subsequent ratification of their acts; none can be claimed except such as is found in the neglect of the town to dissent, and in the towns receiving the $100. 1st. The town was not bound to express dissent. A town speaks only by its votes. Its silence is the silence only of individu-

als, whose acts can not conclude the town. An acceptance of the selectmen's report would have been merely formal and complimentary and of no legal effect. 2d. The law is less exacting of a watchful attention to rights, where the party is a public body. 3d. Citizens are generally ignorant of the exact limits of the powers of selectmen, and they may here have failed to dissent from supposing themselves bound. There can be no waiver unless a party knows his rights. 4th. It is not like the case of assent by a principal to the act of his agent where a title has passed that ought not now to be shaken, or any fixed rights are affected. It is a mere executory agreement, and can be annulled with no damage to the other party. The respondents can be placed in the same position as before. 5th. The receipt of the $100 ought not to conclude us. The selectmen having received it, of course paid it into the town treasury. It was at once expended, with a great deal more, in making repairs that the respondents would otherwise have had to make. Moreover, we now offer to return it, and when it is returned the respondents are made perfectly whole again.

3. The alteration of the location of the road was substantially the laying out of a new road. But selectmen can not lay out a new road except with an express vote of the town accepting the road. A new road can not be established by the neglect of the town to disapprove of it.

4. The alteration was also very clearly a discontinuance of the parts of the old road that were abandoned to the railroad company. But the highway is found to have been laid out by the county court, and so could not have been discontinued, even by an express vote of the town. The public have an interest in the road being kept open and the town can not shut it up. A town may be directly interested in shutting up a road, and so ought not to have the power, where the county court, acting adversely to the town, has laid it out.

5. The charter of the railroad company (Private Acts, vol. 3, p. 888,) expressly provides that the company shall make a new road to the acceptance of a committee. No such com-

mittee has ever been called out. The public have a right that such a committee should be called out. The town can not discharge the company from this duty.

*Chapman*, for respondents.

There is nothing in the plaintiffs' bill, or in the report of the committee, which furnishes any ground for the interference of a court of equity.

1. The selectmen of Burlington had the power to make the contract which is found by the committee. Rev. Stat., tit. 3, sec. 27.

2. If the selectmen exceeded their authority, the contract has been ratified and adopted by the town and is binding upon the petitioners. 1 Parsons on Cont., 44. Story on Agency, secs. 239, 244. Story on Cont., secs. 160, 161.

ELLSWORTH, J. It appears that in 1848 the legislature of this state authorized the New Haven and Northampton Company to construct a branch railroad through certain parts of Farmington, Burlington, and Collinsville, and if found necessary, take any public highway, "provided that the highway so changed or altered should be put in as good repair as it was at the time of changing or altering it." In order that there might be an early settlement of any question which should arise, the superior court was authorized to appoint a committee who should act definitively and finally in the premises. In 1848 this railroad company appropriated a portion of the highway in the town of Burlington to the use of the railroad, and then repaired the old road and left it, as they claimed, in as good repair as it was before, and the old road thereafter continued to be used by the public, but not without complaint from time to time from the town of Burlington, that the road was not made as good as it was before.

In 1850 the town renewed their complaint to the railroad company that the road was out of repair, when the company went forward and repaired it; and in order that there might be no further controversy between the parties, as it was the duty of the company to put any road altered by them into

good repair, but not after that to keep it in repair, it was agreed between the town on the one part, who were represented by the selectmen, and the company on the other part, represented by a committee, that the company should pay the town $100, and the town would receive the highway as it then stood, and thereafter keep it in repair, and no further claim should be made upon the company. The $100 was paid to the selectmen and they put it into the town treasury, and the town have used it as their own. This proceeding was regularly reported to the town at its next annual meeting and no dissent expressed.

To the validity of this settlement the town of Burlington object that their selectmen had no power to bind the town. We are all satisfied that the selectmen had the power. Selectmen are the general supervisors of highways in their respective towns. It is made their special duty to see that they are properly made, and when necessary duly repaired, and they may make contracts necessary for these purposes, and decide when the contracts are satisfactorily executed. But this is the same thing in substance as has been done in this instance, neither more nor less. The corporation were bound to make the road as good as it was before it was changed. They attempted to do it, and claimed they had done it. The selectmen agreed to be satisfied with what the corporation had done, if they would add $100, which would be satisfactory to the town. We think this should be obligatory.

Besides, were it necessary we should hold that when the selectmen, in their annual report to the town, laid the matter before the town and informed them that the $100 had been received and paid into their treasury, and the town expressed no dissent or dissatisfaction, they ought not now to complain, certainly not in a court of equity. The proceedings of the selectmen have been fully ratified, if that be important in sustaining the arrangement. The bill must be dismissed.

In this opinion the other judges concurred.

Bill to be dismissed.